## SOUTHERN MILLS CORPORATION v. REGAN.

### No. 133.

Circuit Court of Appeals, Second Circuit.
Dec. 23, 1940.

William J. Carey, of New York City (Lee Epstein, of New York City, of counsel), for appellant.

John B. Doyle, of New York City, for appellee.

Before L. HAND, SWAN, and CLARK, Circuit Judges.

PER CURIAM.

This is an appeal from a judgment for the plaintiff, the seller, in an action to recover damages for the breach of a contract of sale; the only question raised is the sufficiency of the evidence to support a verdict. The contract was made in part by oral negotiation and in part in writing, between the seller, a manufacturer, and the buyer, a jobber. It originated in an interview followed by two written orders of April 8th and April 13th, 1937; the first for 2,000 dozen hanks of clothesline, and the second for 5,000, which was doubled on May 17th. In their original form these orders were for cord of a tensile strength of 200 pounds, but this requirement was canceled and in its place were written the words, "as per sample submitted." The seller at the interview gave two double hanks to the buyer as samples, which, we may assume, turned out to have a respective tensile strength of 200 and 192 pounds, and which the deliveries never equaled, their average being 180. On June 4th the buyer complained of a delivery because the tensile strength was as low as 164 pounds; and it canceled all deliveries on July 7th. These facts were the basis of the defence. On the other hand, in a letter of May 1st the seller wrote the buyer as to the sample: "We frankly told him," the buyer's agent, "that it did not break at 200 pounds tensile strength and when he made this requirement we further frankly told him that we would not sell it guaranteeing such strength only (sic) as per sample. * * * We sold the clothesline according to our understanding per our Victor sample * * * which we said was not up to this strength. While we expect to get the cord up to that strength, nevertheless if we sign officially * * * it binds us." The buyer answered on May 4th: "We think we are entitled to a minimum and maximum strength and trust you can get in touch with the writer to find out some basis on which we can arrive at an understanding." It was while matters stood in this way that the second order was doubled. Immediately thereafter the buyer wrote as to a shipment of 50 ft. hanks, that it had made the test for tensile strength, which had "indicated" that it averaged 185 pounds, having a "low" of 164 and a "high" of 192. This letter ended: "We would prefer to keep this 180 to 200 pounds." The letter of cancellation did not suggest as a reason that the tensile strength had been too low.

Thus it appears that the seller supposed that the samples did not have as high a tensile strength as in fact they had and expressly refused to be bound to so much. The buyer, having learned of this mistake, said nothing about it, and accepted a number of deliveries that ran lower, not only without protest, but with the comment that it ought to have a minimum and a maximum, not intimating that the samples, which it knew to be substantially the suggested maximum, established the average. Indeed in the very letter in which it complained of a parcel of 164 pound strength, again it merely asked that "tensile strength

of 180 to 200 lbs." should be kept "in mind." After all this it would have been the height of duplicity for it to keep in reserve the undisclosed strength of the samples as an excuse for rejected deliveries when the market fell, as it did in July. Indeed, the buyer did nothing of the kind; if it had had any such thing in mind, it would have used it as an excuse for cancellation. It was only six months later, when, being put to it to excuse the repudiation, it resorted to the phrase in the orders. There is no magic in those words; the jury was quite at liberty to decide that the parties only meant that deliveries should be of the same quality and the same standard of manufacture as the samples, and that as to tensile strength they might vary to an extent which the seller could not avoid and which the buyer must tolerate. Plainly the buyer did not consider an average of 180 pounds too great a departure, for it did not reject deliveries which were lower, though it did "prefer" to have that the limit.

Judgment affirmed.